UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

BERNARD GELB,

        Plaintiff,

  - against -

UNITED STATES DEPARTMENT OF HOMELAND
SECURITY, UNITED STATES DEPARTMENT OF
HOMELAND SECURITY—UNDER SECRETARY FOR
MANAGEMENT, UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES, and UNITED
STATES IMMIGRATION AND CUSTOMS
ENFORCEMENT,

        Defendants.

------------------------------------------

15 Civ. 6495 (RWS)

OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/15/17

A P P E A R A N C E S:

      Attorney for Plaintiff
      PAUL BATISTA, PC
      26 Broadway
      New York, NY 10004
      By:  Paul Amandio Batista


      Attorneys for Defendants
      JOON H. KIM
      U.S. Attorney's Office, SDNY
      86 Chambers Street, 3rd Floor
      New York, NY 10007
      By:  Joon H. Kim

1

**Sweet, D.J.**

Defendants United States Department of Homeland Security ("DHS"), United States Department of Homeland Security - Under Secretary for Management ("USM"), United States Citizenship and Immigration Services ("USCIS"), and United States Immigration and Customs Enforcement ("ICE") (collectively, the "DHS defendants" or the "Defendants") have moved pursuant to Fed. R. Civ. P. 56 for summary judgment in this action brought by plaintiff Bernard Gelb ("Gelb" or the "Plaintiff") pursuant to the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* (the "FOIA"). The Plaintiff has cross-moved for summary judgment under the same Rule seeking the documents he requested under the FOIA. The Defendants' motion is granted and the Plaintiff's cross-motion is denied.

## I.    Prior Proceedings

The complaint in the instant action was filed on August 18, 2015. Defendants' motion for summary judgment and Plaintiff's cross-motion were heard and marked fully submitted on July 12, 2017.

2

## II. The Facts

The facts have been set forth in the Declaration of
Plaintiff Bernard Gelb ("Gelb Decl.") dated May 10, 2017,
Defendant's Declarations of Fernando Pineiro ("Pineiro Decl."),
Kevin Tyrrell ("Tyrrell Decl."), Jill Eggleston ("Eggleston
Decl."), and Michael Byars ("Byars Decl."), each of which are
dated March 30, 2017.

Plaintiff specializes in finding persons to whom the
Government owes money and helping these persons obtain the
return of their outstanding funds. Gelb Decl. ¶ 3. Plaintiff
does this by identifying unclaimed monies in the possession of
the Government, pursuing FOIA requests to compel the production
of records relating to the unclaimed funds, contacting the
owners of these funds to inform them that they have outstanding
monies, and then acting on behalf of the owners to secure the
return of these funds. *Id.*

By letter dated November 9, 2009, Plaintiff submitted
a FOIA request to all Defendants seeking: "a complete listing[]
of rightful owners['] name[s], address[es], amount[s]
outstanding, original date[s] outstanding and account number[s],
etc., of all outstanding funds in the 'unclaimed monies account

3

(20X6133) - regarding non-individuals, deceased individuals and individuals - - concerning U.S. Department of Homeland Security." Tyrrell Decl. ¶ 4. This request was received by the DHS Privacy Office ("DHS PRIV"). *Id.* ¶ 5.

On November 25, 2009, the DHS PRIV reviewed Plaintiff's request and determined that if any responsive documents existed, they would be under the purview of the DHS Management Office ("DHS/MGMT"). *Id.* ¶ 11. The FOIA request was accordingly transferred to the FOIA Officer for DHS/MGMT, Mark Dorgan, for review, and an acknowledgement letter was sent to Plaintiff on November 26, 2009 stating such. *Id.* ¶ 12 & Ex. B.

By letter dated November 9, 2009, Plaintiff submitted an identical FOIA request to DHS Under Secretary for Management ("USM"). *Id.* ¶ 13. On December 9, 2009, the USM sent an acknowledgement letter to Plaintiff stating: "We conducted a comprehensive search of files within the Office of the Chief Financial Officer for records that would be responsive to your request. Unfortunately, we were unable to locate or identify any responsive records. At this time, there is not a centralized database of the information, from which the requested data could be extracted. The information resides within the several individual DHS cash management and accounting offices that are

4

responsible for cash collections or undeposited checks. If you seek to contact each of the individual offices, please contact each of the DHS components separately." *Id.* ¶ 15.

On April 26, 2010, Plaintiff submitted an amended FOIA request to DHS/MGMT narrowing his initial request to "outstanding funds, $25,000.00 and greater." *Id.* ¶ 17. Upon consulting with ICE, DHS/MGMT determined that ICE's records of individual unclaimed amounts could be searched manually to obtain information about amounts of $25,000 or more. *Id.* ¶ 19. On May 4, 2010, DHS/MGMT sent Plaintiff a fee estimate for the manual search, which amounted to $4,264.00 of advance payment. *Id.* DHS/MGMT noted that Plaintiff was at liberty to narrow the request, but that if Plaintiff did not respond within 30 days, the amended request would be considered withdrawn. *Id.* DHS/MGMT received no response, and thereafter considered the request withdrawn. *Id.* ¶ 20.

On August 18, 2015, Plaintiff filed the present action. Following the commencement of this litigation, the DHS PRIV contacted DHS/MGMT and the DHS Office of the General Counsel regarding the unclaimed monies account and the nature of the funds within the account. *Id.* ¶ 23. DHS PRIV determined that no DHS headquarters office, including DHS/MGMT, collects or

5

receives monies from the public such that no DHS headquarters officer would have funds that would need to be deposited into the unclaimed monies account. *Id.* ¶ 23. At this time, DHS PRIV verified that the relevant unclaimed monies pertained to amounts initially collected by ICE and USCIS. *Id.* ¶ 24.

Meanwhile, by letter dated November 9, 2009, Plaintiff submitted an identical FOIA request to the ICE FOIA Office. Pineiro Decl. ¶ 5. On November 19, 2009, ICE advised Plaintiff that the requested information was under the control of the DHS, and directed Gelb to pursue his request with DHS. *Id.* ¶ 6.

Also, on November 9, 2009, Plaintiff submitted the same letter to the USCIS, which acknowledged Plaintiff's request, and informed Gelb that the information he sought was related to non-alien file records. Eggleston Decl. ¶¶ 11-12, 15. Accordingly, USCIS assigned the request to a Significant Interest Group (SIG) paralegal, who then forwarded the request to USCIS's Office of the Chief Financial Officer (OCFO) where staff were requested to conduct a search for any responsive records. *Id.* ¶¶ 15, 17. OCFO then determined that ICE, not USCIS, maintains all USCIS records regarding trust deposits. *Id.* USCIS informed Plaintiff that the information he requested was under ICE's purview, and invited Plaintiff to redirect his

6

request according to ICE's FOIA Office address, which USCIS provided. *Id.* ¶ 18.

Following the commencement of this litigation, ICE "reassessed whether ICE might have responsive records," and determined that ICE Office of the Chief Financial Officer might have information relating to the relevant accounts. *Id.* ¶ 11. ICE Office of the Chief Financial Officer received the forwarded request and tasked a Supervisory Financial Program Specialist ("SFPS") in the Revenue Management Branch to conduct a search for responsive documents. *Id.* ¶ 12. The SFPS utilized the Trust Recon Database to produce a listing of all DHS transactions with the Trust Account in the amount of $25,000 or more dating from FY 2008 to FY 2016. *Id.* ¶ 13. At the time, ICE did not maintain a centralized database from which to extract the complete listing of information requested. *Id.* ¶ 16. Rather, ICE recorded transfers on forms that might contain one or more transfers to other accounts.

On May 27, 2016, the ICE FOIA Office released to Plaintiff two pages containing information about Trust Account transactions involving DHS from FY 2008 through FY 2016 that were $25,000 or more in response to Plaintiff's request. *Id.* ¶ 19. Information associated with these transactions indicated

that all of the amounts were unclaimed immigration bonds. *Id.*
The two pages were partially redacted in the columns listing the
obligor's last and first names, social security number, alien
last and first names, and alien number. *Id.* & Ex. E.


### III. Applicable Standard


Summary judgment is appropriate only where "there is no
genuine issue as to any material fact and . . . the moving party
is entitled to a judgment as a matter of law." Fed. R. Civ. P.
56(c). "[T]he substantive law will identify which facts are
material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
(1986).


A dispute is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
*Id.* The relevant inquiry on application for summary judgment is
"whether the evidence presents a sufficient disagreement to
require submission to a jury or whether it is so one-sided that
one party must prevail as a matter of law." *Id.* at 251-52. A
court is not charged with weighing the evidence and determining
its truth, but with determining whether there is a genuine issue
for trial. *Westinghouse Elec. Corp. v. N.Y. City Transit Auth.*,
735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting *Anderson*, 477

U.S. at 249). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue of material fact*." *Anderson*, 477 U.S. at 247-48 (emphasis in original). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252.

# IV. **The Defendants' Motion for Summary Judgment is Granted and the Plaintiff's Cross-Motion is Denied**

To prevail on a motion for summary judgment under the FOIA, "the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). This burden is met where the agency supplies facts by way of affidavits or declarations "indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption." *Id.* Further, "[a]ffidavits submitted by an agency are 'accorded a presumption of good faith.'" *Id.* (citing *Safecard Servs. Inc. v. SEC*, 926 F.2d 1197,

1200 (D.C. Cir. 1991)).

A district court may grant summary judgment in favor
of an agency "on the basis of agency affidavits if they contain
*reasonable specificity* of detail rather than merely conclusory
statements, and if they are not called into question by
contradictory evidence in the record or by evidence of agency
bad faith." *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 478 (2d
Cir. 1999) (emphasis in original). "[E]xtraordinary measures are
not required, only a search reasonably designed to identify and
locate responsive documents." *Garcia v. U.S. Dep't of Justice,
Office of Info. & Privacy*, 181 F. Supp. 2d 356, 366 (S.D.N.Y.
2002) (internal quotation marks omitted). An agency search is
not deemed inadequate simply because some documents were not
returned until a later, more exhaustive search. *Grand Cent.
P'ship*, 166 F.3d at 489.

Rather, the question such FOIA litigation raises is
"whether the search was reasonably calculated to discover the
requested documents, not whether it actually uncovered every
document extant." *SafeCard Servs.*, 926 F.2d at 1201. "Even a
'disjointed' search, made in response to a requester's
'prodd[ing]' during litigation, can suffice." *Flores v. United
States Dep't of Justice*, No. 15 Civ. 2627 (JMA), 2016 WL

10

7856423, at *10 (E.D.N.Y. Oct. 4, 2016) (Report and
Recommendation) (quoting *Aland v. U.S. Dep't of the Interior*,
No. 13 C 3547, 2014 WL 4680747, at *1-*3 (N.D. Ill. Sept. 19,
2014)).

## a. The Defendants' Search for Plaintiff's Responsive Documents was Adequate

Under the above standard, Defendants' searches were
adequate and consistent with their FOIA obligations. To start,
only ICE, and not DHS, USM, or USCIS, maintained records of the
deposited monies that Gelb requested. Accordingly, DHS, USM and
USCIS's FOIA obligations rest on whether the agencies' searches
were "reasonably calculated to discover the requested
documents," not on whether the requested information was
returned. *See SafeCard Servs.*, 926 F.2d at 1201.

Upon receipt and review of Plaintiff's initial FOIA
request, DHS determined that the agency did not have access to
the requested documents, and relayed this information to the
Plaintiff. DHS recommended that Plaintiff speak with the FOIA
Officer for MGMT as he might be better positioned to provide
assistance with this search because the requested documents were
"under [his] purview." *See* Tyrrell Decl. ¶ 12. DHS/MGMT then

consulted with ICE and determined that ICE's records of
unclaimed amounts could be searched manually for information
regarding amounts of $25,000 or more. *Id.* ¶ 19. DHS/MGMT's
letter to Plaintiff provided that such a manual search required
an advance fee payment of $4,264.00, pursuant to 5 U.S.C. §
552(a)(4)(A)(ii)(I)-(III) (2000) and 6 C.F.R. § 5.11(i). As
Plaintiff did not provide this payment, his request was deemed
withdrawn, and DHS's search obligations under FOIA were
therefore complete.

Likewise, upon receiving Plaintiff's letter, USM
conducted a thorough search of its files, and was unable to
identify any responsive documents. Tyrrell Decl. ¶ 15. USM
redirected Plaintiff to other agencies that might have control
over the requested information. *Id.* In doing so, USM satisfied
its obligations to conduct a search "reasonably calculated to
discover the requested documents under FOIA."

Similarly, USCIS assigned Plaintiff's request to a SIG
paralegal who then reviewed the request, determined OCFO was the
appropriate USCIS party to handle the request, and then
forwarded the request accordingly. Eggleston Decl. ¶¶ 15-17.
OCFO then redirected the request to ICE, the agency responsible
for maintaining all USCIS trust deposits. *Id.* Rather than

12

demonstrate USCIS' ambivalence to Plaintiff's FOIA request, this string of forwarded requests communicates the agency's commitment in attempting to locate Plaintiff's requested documents.

Finally, ICE conducted a comprehensive search and returned two pages of information relevant to Plaintiff's request. It does not matter that ICE fulfilled this request after the beginning of this litigation, or even that ICE may or may not have returned every relevant or applicable document in existence. *See Flores*, No. 15 Civ. 2627 (JMA), 2016 WL 7856423, at *10 (E.D.N.Y. Oct. 4, 2016); *see also SafeCard Servs.*, 926 F.2d at 1201.

Gelb claims that Defendants evidence bad faith during his purported telephone conversation with USM employee Mark Dorgan on or about January 6, 2010, when Dorgan allegedly told him that Defendants would comply with their FOIA obligations only if Gelb sued them. However, the record reflects that Gelb and Dorgan had at least three communications following the January 6, 2010 phone call, and that Dorgan took additional steps to try to provide Gelb with the records he sought. Specifically, in response to Gelb's amended FOIA request, Dorgan sent Gelb two letters that, together, reflected that the

appropriate DHS component had been queried and would be tasked with searching and processing records of deposits to the unclaimed moneys account for individual amounts of $25,000 or more, provided that Gelb pay an estimated fee of $4,254. *See* Tyrrell Decl. ¶¶ 17-19, Exs. H & I.

Accordingly, DHS, USM, USCIS, and ICE conducted searches "reasonably designed to identify and locate responsive documents," as required by the FOIA. *See Garcia*, 181 F. Supp. 2d at 366. Absent a showing of bad faith on the part of the agencies, of which there is none here, the agencies engaged in adequate searches in response to Gelb's FOIA requests.

### b. ICE's Assertion of Exemptions 6 and 7(C) Was Proper

ICE withheld from its 2016 release to Gelb certain information that would identify the individuals who posted the unclaimed bonds transferred to the Trust Account. *See* Pineiro Decl. Ex. E. Specifically, the first and last names, social security number or tax identification numbers, and alien numbers of the fund owners from the 2016 records provided to the Plaintiff. *See id.* ¶ 29 & Ex. F. ICE has asserted Exemptions 6 and 7(C) to justify these redactions. While the statutory contours of these two exemptions differ somewhat, the balancing

14

analysis required under each is essentially the same for the facts presented.

Specifically, Exemption 6 protects against disclosure of "(6) personnel and medical files . . . [that] would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) exempts records or information compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(7)(C). Thus, although Exemptions 6 and 7(C) overlap, Exemption 7(C) is broader and requires a lesser showing of the likelihood of intrusion into personal privacy. *See, e.g., Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165-66 (2004).

Moreover, Exemption 7(C) contains an additional threshold requirement that does not apply to Exemption 6, namely, that the Government "has the burden of proving the existence of a compilation of information for the purposes of law enforcement." *Ferguson v. FBI*, 957 F.2d 1059, 1070 (2d Cir. 1992). "[O]nce the government has demonstrated that the records were compiled in the course of an investigation conducted by a law enforcement agency, the purpose or legitimacy of such executive action are not proper subjects for judicial review."

*Halpern v. FBI*, 181 F.3d 279, 296 (2d Cir. 1999). The
information redacted by ICE was collected in the course of
enforcing federal immigration law involving the apprehension and
detention of aliens as well as their release on bond while
immigration enforcement proceedings were pending. *See* Pineiro
Decl. ¶¶ 24-26. So, the law enforcement threshold for ICE's
assertion of Exemption 7(C) is satisfied.

Nevertheless, a balancing of the public versus private
interests in disclosure, as mandated by Congress under the FOIA,
establishes that ICE's redactions were proper. The Court must
"'balance the public interest in disclosure against the
[privacy] interest Congress intended the Exemption to protect.'"
*Associated Press*, 554 F.3d at 284 (discussing Exemption 7(C) and
quoting *Reporters Comm.*, 489 U.S. at 776); *see also id.* at 291
(discussing Exemption 6, and citing *Dep't of Air Force v. Rose*,
425 U.S. 352, 372 (1976)).

As for the first step of the balancing inquiry, the
privacy interest must be identified. *See id.* at 284. The
defendants have met their burden under either Exemption 6 or
7(C), as each of the third parties whose information was
withheld maintains a strong privacy interest in the protection
of their personally identifying information. "The privacy side

16

of the balancing test is broad and encompasses all interests

involving the individual's control of information concerning his

or her person." *Wood v. FBI*, 432 F.3d 78, 88 (2d Cir. 2005)

(quotation marks omitted); *see also Associated Press*, 549 F.3d

at 65. For instance, "individuals . . . have privacy interests

in the dissemination of their names," *Massey v. FBI*, 3 F.3d 620,

624 (2d Cir. 1993), as well as their addresses, social security

numbers, and other personally identifying information, *see,*

*e.g., Fed. Labor Relations Auth. v. U.S. Dep't of Veterans*

*Affairs*, 958 F.2d 503, 510-11 (2d Cir. 1992); *Adamowicz v. IRS*,

672 F. Supp. 2d 454, 473-74 (S.D.N.Y. 2009), *aff'd*, 402 F. App'x

648 (2d Cir. 2010).

Release of the withheld information would expose the

individuals who did not consent to the release of their personal

information, to potential identify theft and unwanted contact.

*See* Pineiro Decl. ¶ 30 & Ex. F. These individuals also have a

privacy interest in avoiding the potential stigma of being

identified in connection with law enforcement records as either

detainees who violated the immigration laws or persons who

posted bonds on behalf of such detainees. *Id.* ¶¶ 19, 31; *see*

*Reporters Comm.*, 489 U.S. at 763-66 (noting that individuals

have a substantial privacy interest in avoiding disclosure of

complied criminal history information); *see also Lesar v. U.S.*

*Dep't of Justice*, 636 F.2d 472, 487-88 (D.C. Cir. 1980).

The Court then weighs this privacy interest against the sole relevant public interest in disclosure, which is "'to open agency action to the light of public scrutiny.'" *Associated Press*, 554 F.3d at 285 (quoting *Reporters Comm.*, 489 U.S. at 772). The inquiring citizen "must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake." *Id.* at 288.

According to Gelb, the redacted information should be made public so as to promote the public good because "[i]nformation regarding $275 million in unclaimed money is decidedly significant enough to merit disclosure under the FOIA." However, Plaintiff has not come forward with evidence reasonably supporting a belief that government wrongdoing has occurred that would warrant release of the withheld information.

To the extent that a requestor asserts that the public interest will be served by disclosure because the records expose government misconduct, the courts evaluate such claims under a reasonable person standard:

[W]here there is a privacy interest protected by

18

Exemption 7(C) and the public interest being asserted
is to show that responsible officials acted
negligently or otherwise improperly in the performance
of their duties, the requester must establish more
than a bare suspicion in order to obtain disclosure.
Rather, the requestor must produce evidence that would
warrant a belief by a reasonable person that the
alleged Government impropriety might have occurred.

*Favish*, 541 U.S. at 174; *see also Wood*, 432 F.3d at 89
(explaining that "a presumption of legitimacy attends
government actions that may not be overcome on the basis of
unsupported allegations" and noting that the names of
individual government agents would not further the
purported public interest in assessing their actions). This
is because "allegations of misconduct are easy to allege
and hard to disprove." *Id.* at 175. An agency may therefore
"withhold 'the names and addresses of private individuals
appearing in files within the ambit of Exemption 7(C)
[unless disclosure] is necessary in order to confirm or
refute compelling evidence that the agency is engaged in
illegal activity.'" *Nation Magazine, Washington Bureau v.
U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995)
(alteration in original) (quoting *Safecard Servs., Inc. v.
SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991)).

        Gelb maintains that the 2016 record search was not
"reasonable[]" because ICE purportedly did not "set forth the

search terms and the type of search performed, and aver[] that all files likely to contain responsive materials were searched." However, this is not a case involving a search of electronic records through use of particular search terms. Rather, ICE electronically queried the database containing information about transfers of amounts that were initially collected by USCIS or ICE into account 20X6133 to obtain information about transfers that involved individual amounts of $25,000 or more. *See* Pineiro Decl. ¶ 13. ICE has affirmed that such a query is reasonably calculated to locate responsive records for transfers of amounts originally collected by ICE and USCIS, and that, other than a manual search of PDF records of individual transfers, there is no other location where responsive records are likely to be located. *See id.* ¶¶ 11-18.

The Court also rejects Gelb's challenge to the assertion of FOIA's privacy-related exemptions with respect to certain personally identifying information contained in the 2016 response. To the extent that Gelb suggests that the law enforcement threshold for an exemption under 552 U.S.C. 552(b)(7) is not met, he is incorrect. An agency asserting one of the section (b)(7) exemptions has the threshold "burden of proving the existence of a compilation of information for the purpose of law enforcement." *Ferguson v. FBI*, 957 F.2d 1059,

1070 (2d Cir. 1992). The information redacted from the 2016 release was collected in the course of enforcing federal immigration law involving the apprehension and detention of aliens as well as their release on bond while immigration enforcement proceedings were pending. This information thus plainly qualifies for an assertion of an exemption under section 552(b)(7).

Moreover, Exemptions 6 and 7(C) cover precisely the type of personally identifying information that is at issue here. The standards for evaluating a "public interest" that were applied in two of the cases cited by the Plaintiff (namely, *Aronson v. U.S. Department of Housing and Urban Development*, 822 F.2d 182, 184 (1st Cir. 1987), and *Farnum v. U.S. Department of Housing and Urban Development*, 710 F. Supp. 1129, 1136 (E.D. Mich. 1988)), were superseded by the Supreme Court's decision in *U.S. Department of Justice v. Reporters Committee for Freedom of the Press*, which held that disclosure of information about an individual does not serve the public interest merely because it is interesting or socially beneficial in some broad sense. *See* 489 U.S. at 772-72 & n.20.

Finally, the Court rejects Gelb's assertion that privacy rights do not apply here because certain individuals

should be presumed dead due to the age of the records and because some amounts might belong to businesses. The 2016 release concerns transfers from 2008 through the first quarter of 2016. *See* Pineiro Decl. ¶¶ 13, 17. The presumption of death should not apply here, since an individual may be presumed to have died only if the record shows he would be at least one hundred years old, *see Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 660 (D.C. Cir. 2003), and there is no basis to presume that the records for the period in question involved detainees who were at least ninety-one years old in 2008. Moreover, as ICE's *Vaughn* index makes clear, Exemptions 6 and 7(C) were applied to redact certain information about "individual(s)," *i.e.*, and not businesses. Pineiro Decl. Ex. F.

Accordingly, Plaintiff has not articulated a sufficient basis for release of the redacted information, and ICE's reliance on Exemptions 6 and 7(C) was proper.

## c. Plaintiff's Constitutional Right to Due Process Was Not Violated

To the extent Plaintiff asserts a due process violation premised on the Defendants' mishandling of his FOIA request, no plausible constitutional violation has been pled.

22

"When protected interests are implicated, the right to some kind of prior hearing is paramount." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1982). However, Plaintiff has not demonstrated that he has been deprived of a constitutionally protected property interest. To have a protected property interest, one "clearly must have more than an abstract need or desire for it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Here, Gelb asserts a property interest in potential, future business relationships with the owners of unclaimed money accounts, yet these relationships are in no way assumed or guaranteed. Moreover, "because of the comprehensive scheme which FOIA establishes, including the availability of appropriate injunctive relief, federal courts have held that due process deprivations cannot be premised on an alleged FOIA violation." *N'Jai v. U.S. E.P.A.*, Civ. No. 13-1212, 2014 WL 2508289, at *19 (W.D. Pa. June 4, 2014).

In addition, Plaintiff may not assert third-party standing to bring procedural due process claims on behalf of the owners of the unclaimed monies because these are not his rights to assert. A party seeking third-party standing "must demonstrate a close relationship with the person who possesses the right and that the possessor would face a hindrance to protecting his own interest." *W.R. Huff Asset Mgmt. Co., LLC v.*

23

*Deloitte & Touche, LLP*, 549 F.3d 100, 109 (2d Cir. 2008) (internal quotation marks omitted). As Plaintiff has demonstrated neither a close relationship with the owners of the unclaimed moneys, nor shown that these persons could not bring such a claim on their own behalf, Plaintiff lacks third-party standing.

### d. This Action Relates Only to Unclaimed Moneys Account 20X6133 and Not to an Unclaimed Uncashed Checks Account

Finally, the Court resists Gelb's efforts to expand the scope of this action to cover records about a different account not previously raised in this matter. Up until now, Gelb has sought only a listing of specified information relating to "all outstanding funds[] *in the unclaimed monies account (20X6133) . . . .* " Gelb claims that he has been denied records regarding some $275 million in unclaimed funds, although he attributes only some $175 million of that total to account 20X6133. The additional $100 million represents the alleged balance from a purported unclaimed uncashed checks account. As this unclaimed uncashed checks account was not part of Gelb's FOIA request, the Court disregards all references to that account, including that defendants did not produce records about

that account or discuss that account in their declarations.

**V.    Conclusion**

Based on the facts and conclusions set forth above, the Defendants' motion for summary judgment is granted, and the Plaintiff's cross-motion for summary judgment is denied.

It is so ordered.

**New York, NY**
**September 15, 2017**

_____
                    ROBERT W.  SWEET
                       U.S.D.J.